IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Annette SANDERS, Attorney at Law.

Supreme Court

*No. 91-3009-D. Submitted on briefs January 7, 1993.—Decided January 28, 1993.*

(Also reported in 494 N.W.2d 430.)

For the appellant there were briefs by *Daniel W. Hildebrand* and *Ross & Stevens, S.C.*, Madison.

For the Board of Attorneys Professional Responsibility there was a brief by *Gerald C. Sternberg.*

PER CURIAM.   *Attorney disciplinary proceeding; attorney's license suspended.*

Attorney Annette Sanders appealed from the referee's conclusions that she engaged in professional misconduct by making misrepresentations to the court in two criminal matters in which she appeared as prosecutor and also from the referee's recommendation that her

license to practice law in Wisconsin be suspended for 60 days as discipline for that misconduct. Attorney Sanders made misrepresentations to the court in the course of criminal cases in which she appeared on behalf of the state. Moreover, those misrepresentations had serious repercussions and occurred within a short time of each other. We determine that the recommended license suspension is appropriate discipline to be imposed for that misconduct.

Attorney Sanders was admitted to practice law in Wisconsin in 1982 and served as assistant district attorney in Sauk county in 1987 and 1988. In May, 1989 she relocated to California, where she is not currently licensed to practice law. She has not previously been the subject of a disciplinary proceeding. Following a hearing, the referee, Attorney Cheryl Rosen Weston, made the following findings of fact.

In 1988, Attorney Sanders represented the state in a theft case scheduled for trial on March 2. That case was originally scheduled by the court as the fourth "backup" case, which would be tried if the cases scheduled ahead of it settled prior to trial, but a day or so prior to the trial date, it had moved to the number one position for trial and both attorneys were notified of that fact.

On March 1, 1988, Attorney Sanders told the court scheduling clerk that the criminal matter was settled and, relying on that information, the clerk removed the case from the calendar. In fact, the case was not settled. Attorney Sanders had not told defense counsel that she intended to request its removal from the court calendar and defense counsel never consented to its removal from that calendar. The referee specifically found that Attorney Sanders gave the clerk false information in order to have the case taken off the trial calendar. After receiving that misinformation from Attorney Sanders, the clerk

released the jury from serving in the case and the judge subsequently dismissed the charges against the defendant upon the defendant's motion based on the removal of the matter from the trial calendar.

In another matter in 1988, a man pleaded guilty to felony possession of a firearm and was sentenced to six months in jail. Attorney Sanders, on behalf of the state, and defense counsel agreed at the time of sentencing that sentence would be stayed for 60 days to permit the defendant to find a job; thereafter, the man would receive work release privileges only if he had a job to go to, not if he merely wanted to interview for a job. That agreement, made on the basis of representations that Attorney Sanders had made to defense counsel regarding jail policy on work release, was incorporated into the judgment of conviction. When the man did not get a job within the 60 days, he was jailed without work release privileges.

Subsequently, defense counsel moved to have her client accorded work release privileges for the purpose of seeking employment. At a hearing on that motion, Attorney Sanders told the court that two jail personnel had told her that, while the jail has the right to regulate work release privileges in respect to employment search, neither of them wanted that individual to have those privileges for the purpose of looking for employment.

The hearing on the motion was continued for one month, at which time defense counsel brought on an additional motion for prosecutorial misconduct on the ground that Attorney Sanders' statements regarding jail policy on work release and the jail personnel's comments were false. At the hearing on that motion, the two jail personnel testified that the jail has no policy against allowing work release privileges for an inmate's seeking employment and neither recollected having told Attor-

ney Sanders he did not want the defendant to have those privileges for that purpose. Each subsequently denied having made any such statement to Attorney Sanders.

As discipline for her misconduct in these matters, the referee recommended that the court suspend Attorney Sanders' license to practice law in Wisconsin for 60 days. In making that recommendation, the referee noted that neither false statement Attorney Sanders made to the court was "outrageous": in the first, she stated to the clerk that a case which probably would have settled had been settled; in the second, she misrepresented the jail policy in respect to work release privileges for inmates seeking employment and jail personnel statements regarding an individual inmate. Nevertheless, the referee held Attorney Sanders, as a participant in the justice system, to her professional obligation to present the truth, lest those who appear in court feel free to alter the facts "just a little." The referee expressed serious concern that the legal system not be perceived as lacking integrity and credibility.

In this appeal, Attorney Sanders argued that the referee's conclusions that she engaged in professional misconduct were based on findings of fact not supported by clear and satisfactory evidence. That contention is without merit. The referee's findings rested, in large part, on her assessment of the credibility of the witnesses: the court scheduling clerk who testified that Attorney Sanders told her on the day before the scheduled trial that the criminal matter was settled and the two members of the jail staff who testified concerning the jail's work release policy and denied having told Attorney Sanders that they did not want work release privileges to be granted to a particular individual, as she had claimed.

Attorney Sanders' misrepresentations to the court in these two matters were serious. Her intentional misrepresentation to the scheduling clerk that a trial she was scheduled to prosecute had settled resulted in the dismissal of criminal charges against a defendant without an adjudication on its merits; her misrepresentations to defense counsel and to the court concerning jail policy on work release and the jailers' position on work release for an individual deprived that person of a privilege provided by law to be released temporarily to look for employment. Moreover, her misrepresentations in the second matter were made less than nine months after the misrepresentation she had made to the court scheduling clerk. Attorney Sanders' professional misconduct warrants the imposition of the license suspension recommended by the referee.

IT IS ORDERED that the license of Annette Sanders to practice law in Wisconsin is suspended for a period of 60 days, effective the date of service of this order.

IT IS FURTHER ORDERED that within 60 days of the date of this order Annette Sanders pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of her inability to pay the costs within that time, the license of Annette Sanders to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Annette Sanders comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.